151 P.3d 831

Olen LEADER, Petitioner–Appellant,

v.

Larry D. REINER, Trial Court Adminis-
trator, Fourth Judicial District Court;
and Darla Williamson, Administrative
District Court Judge, Fourth Judicial
District, Respondents.

No. 31843.

Supreme Court of Idaho,
Boise, December 2006 Term.

Jan. 25, 2007.

**636**

Dennis M. Charney, Eagle, for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondents. Soo Kang argued.

EISMANN, Justice.

This is an appeal challenging the Bail Bond Guidelines adopted by the Administrative District Judge of the Fourth Judicial District and the Judge's authority to remove an agent from the authorized list of bail bond agents because bail bonds posted by the agent have been forfeited and unpaid within ninety days. The Appellant also challenges various procedures regarding mailing notices of bond forfeitures and filing motions to exonerate bonds upon the surrender of a defendant. Because the substantive issues raised by the appeal were not raised below, we decline to consider them.

## I. FACTS AND PROCEDURAL HISTORY

While employed as a bail bond agent for Acme Bail Bonds, Olen Leader (Appellant) posted bail bonds for various defendants in criminal cases including a $1,000 bail bond for defendant Chanthabout Mounivong in case number M0103393, a $500 bail bond for defendant Terry Hurrle in case number M0310424, a $550 bail bond for defendant Chelsea Keena in case number M0213020, and a $550 bail bond for defendant Chelsea Keena in case number M0303768. Appellant later quit working for Acme Bail Bonds and was employed by Alladin Bail Bonds.

Mounivong failed to appear in court when required, his bond was forfeited on November 1, 2004, and a notice of forfeiture was sent to Acme Bail Bonds. It surrendered Mounivong to the Ada County Sheriff within ninety days after the forfeiture, and one of its agents filed a motion seeking exoneration of the bond. The Assistant Trial Court Administrator (Assistant TCA) recommended that the motion be denied because the agent did not have the authority to act on behalf of Appellant, and the presiding judge denied the motion for that reason. On January 28, 2005, the Assistant TCA sent Appellant a letter informing him that the motion was denied and that "in accordance with the policy for removing agents" the matter had to be rectified by 5:00 p.m. on January 31, 2005, which was the ninetieth day after forfeiture.[1] A copy of the letter was sent to Acme Bail Bonds.

Hurrle's bond was ordered forfeited for his failure to appear in court. On February 24,

---

1. The bail or undertaking must be exonerated if within ninety days after forfeiture either the defendant appears and satisfactorily excuses his neglect to appear or a person, other than the defendant, who provided bail surrenders the defendant to any Idaho peace officer. I.C. § 19–2927.

2005, the Assistant TCA sent Appellant a letter informing him that the forfeiture must be paid by 12:00 p.m. on March 7, 2005. The letter also stated that this was his first violation notice and that upon the mailing of a fourth violation notice the Trial Court Administrator (TCA) may request that the Administrative District Judge (ADJ) remove Appellant from the list of approved bail bond agents for the Fourth Judicial District. Copies of the letter were also sent to the department of insurance, to Terrence Cressy at Acme Bail Bonds, to Continental Heritage Insurance Company, and to James Garske at Aladdin Bail Bonds.

Keena's bonds were also ordered forfeited for her failure to appear in court when required. On March 14, 2005, the Assistant TCA sent Appellant two letters (one for each case) informing him that the forfeitures must be paid by 12:00 p.m. on March 24, 2005. The letters also notified him that they were his second and third violation notices and again warned him that upon a fourth violation notice he may be removed from the list of approved bail bond agents in the Fourth Judicial District. Copies of each letter were also sent to the department of insurance, to Scott Esparza at Acme Bail Bonds, to Continental Heritage Insurance Company, and James Garske at Aladdin Bail Bonds.

On February 10, 2005, Appellant commenced this proceeding seeking to have the ADJ order the TCA to mail future forfeiture notices for bonds Appellant wrote while employed at Acme Bail Bonds to its supervising agent and to have rescinded the obligations imposed upon Appellant in the January 28, 2005 letter from the Assistant TCA. After he received the letters regarding Hurrle and Keena, Appellant amended his petition to ask also that the first, second, and third violations set forth in those letters be rescinded.

The matter was heard by the ADJ. She held that the court clerk, not the TCA, is responsible for sending notices of forfeiture pursuant to Idaho Code § 19–2927 and I.C.R. 46(e)(5). She therefore refused to order that the TCA mail the notices to Appellant's former employer. The ADJ denied Appellant's request to rescind the obligations set forth in the letter dated January 28, 2005, because

that letter did not impose any obligations. Finally, she also denied Appellant's request to rescind the first, second, and third violations and gave him until April 5, 2005, to comply with the Bail Bond Guidelines of the Fourth Judicial District. Appellant then filed this appeal.

## II. ISSUES ON APPEAL

1. Does the Administrative District Judge have authority to promulgate binding guidelines regulating bail agents?

2. Are the Bail Bond Guidelines of the Fourth Judicial District invalid?

3. Can a former agent who is not an attorney sign motions on behalf of a former principle?

4. Is the surety or the bail bond agent entitled to notice of bond forfeiture?

5. Does the ADJ have the authority to remove a bail agent from the approved list because the agent's former surety did not pay a forfeited bond?

## III. ANALYSIS

### A. Does the Administrative District Judge Have Authority to Promulgate Binding Guidelines Regulating Bail Agents?

█ The appellant asks us to first decide whether the ADJ had authority to promulgate the Bail Bond Guidelines for the Fourth Judicial District. Appellant did not raise that issue below. In fact, when the ADJ asked Appellant's counsel whether it was his position that there should be no Bail Bond Guidelines, he responded, "No, I'm not saying that at all."

█ "The longstanding rule of this Court is that we will not consider issues that are raised for the first time on appeal." *Murray v. Spalding,* 141 Idaho 99, 101, 106 P.3d 425, 427 (2005). We have made an exception for constitutional issues if their consideration is necessary for subsequent proceedings in the case. *Id.* That exception does not apply here. Therefore we will not consider this issue.

## B. Are the Bail Bond Guidelines of the Fourth Judicial District Invalid?

■ The ADJ adopted the Bail Bond Guidelines after receiving input from representatives of the bail bond industry, including Appellant's counsel. At the hearing, Appellant's counsel did not argue that the Guidelines were invalid. He stated that he did not contemplate the circumstances in this case, where one bail bond agent leaves a bail bond agency and is employed by another. He therefore argued that the Guidelines should be changed insofar as they apply to this type of situation. The ADJ included in her decision an offer to consider any needed changes. The last paragraph stated:

During the hearing, it was suggested that the guidelines should be modified so that the bail bond company and not the individual agent be notified by the TCA of the failure to ensure that a forfeited bond is paid. If after such notification the forfeited bond is not paid, the guidelines should then require that the bail bond company be prohibited from presenting bonds, which would also apply to all its current agents. The guidelines are not set in concrete and the court is willing to consider this proposal. **Counsel for Leader is invited to submit proposed changes to the guidelines for the court's consideration.**

(Emphasis in the original.) The record does not reflect whether Appellant's counsel has submitted any proposed changes.

The Appellant asks us to rule that the Bail Bond Guidelines are invalid because they conflict with various statutes regarding bail, I.C. §§ 19–2901 *et seq.*, with the authority of the department of insurance to regulate bail agents, I.C. §§ 41–1037 through 41–1045, and with principles of agency law. The Appellant did not raise this issue below. Because the appellant raised this issue for the first time on appeal, we will not consider it. *Murray v. Spalding,* 141 Idaho 99, 101, 106 P.3d 425, 427 (2005).

## C. Can a Former Agent Who Is Not an Attorney Sign Motions on Behalf of a Former Principle?

The magistrate judge presiding over the Mounivong case initially refused to exonerate the bail bond because the motion was not signed by Appellant but by an employee of Acme Bail Bonds, Appellant's former employer. The Bail Bond Guidelines require the "bail agent" to make the motion and define the bail agent as "the bail; a person who offers an undertaking acceptable to the court for release of the defendant and the person to whom custody of the defendant is released."

On January 28, 2005, the Assistant TCA sent Appellant a letter stating:

Enclosed are copies of the Motion and denied Order of Exoneration of Bail Bond After Forfeiture in the above-referenced matter.

Please be advised that, in accordance with the policy for removing agents signed by the Administrative District Judge for the Fourth Judicial District on October 1, 2004, this matter must be rectified by *5:00 p.m. on Monday, January 31, 2005,* which will be the 90th day after the date of the bond forfeiture.

(Emphasis in original.)

Appellant sought an order from the ADJ rescinding the "obligations" imposed upon him as set forth in the letter from the Assistant TCA dated January 28, 2005. At the commencement of the hearing, counsel for the TCA stated that all matters except the two bonds in the Keena cases had been resolved to the TCA's satisfaction. He also stated during the hearing that the magistrate judge presiding over the Mounivong case had exonerated the bond when asked to reconsider the matter. Appellant's counsel responded, "That's news to me." Neither side produced any evidence showing that the bond had been exonerated.

The ADJ denied Appellant's request to rescind the obligations in the Assistant TCA's letter because the letter did not impose any obligations upon Appellant. As stated by the ADJ, "This letter did not impose obligations but apprised Leader of the order denying the motion for exoneration and reminded Leader of the policy for removing agents if the forfeiture was not satisfied."

■ The Appellant contends that even though the letter did not specify what the obligation was, he believes that it was for him to personally sign and file the motion to exonerate the bond. He argues that such obligation would require him to practice law without a license. The ADJ did not order Appellant to personally sign and file a motion to exonerate the bail bond in the Mounivong case, assuming that it had not been exonerated already. Appellant's assumption of what the letter may have meant does not create a justiciable issue.

The Appellant argued below that requiring him to file the motion for exoneration would violate Idaho Code § 19–2925, which provides:

> For the purposes of surrendering the defendant, the bail, at any time before they are finally discharged, and at any place within the state, may themselves arrest him, or by a written authority endorsed on a certified copy of the undertaking, may empower any person of suitable age and discretion to do so.

It is not clear how requiring the Appellant to file a motion to exonerate a bond he posted as a bail bond agent would violate this statute. The statute does not even deal with exoneration of the bond.

■ Appellant argued that the statute only grants authority to the surety company and its agents to arrest a defendant. He contends that once he left his employment with Acme Bail Bonds, he was no longer an agent of the surety company that was liable on the bail bond posted in the Mounivong case and therefore could not have arrested Mounivong. Appellant never explained how the asserted lack of authority to arrest Mounivong prevented him from filing a motion to exonerate the bail bond once Mounivong had been arrested and surrendered to the sheriff.

In *State v. Sheahan,* 139 Idaho 267, 77 P.3d 956 (2003), we upheld a jury instruction stating that the bail bondsman who provided bail for the defendant had the authority to arrest him. The jury instruction was as follows:

> For the purpose of surrendering the defendant, a person who provided bail for the defendant, at any time before they are finally discharged, and at any place within the state, may themselves arrest him. Where the defendant refuses to surrender himself to the bondsman upon notice from the bondsman to do so, the bondsman may use reasonable and necessary force to effect the arrest, but may not use unnecessary and excessive force.

139 Idaho at 283, 77 P.3d at 972. Citing Idaho Code § 19–2925, we held, "The instruction reflects statutory and common law authority granted to bail bondsmen." *Id.* Thus, Appellant had the authority to arrest Mounivong.

■ Many of the Appellant's arguments made below center upon applying specific provisions and words in Idaho's bail statutes to bail bonds. The problem with that approach is that most of the applicable statutes were enacted before there were bail bonds. The bail statutes provide that to be released from custody on bail, the defendant first had to have a judge set the dollar amount of bail. I.C. § 19–2901 & 19–2902. The defendant then had two statutory options. One option was to deposit cash with the clerk of the court in the amount that the judge set for bail. I.C. § 19–2922. The other option was to have two sufficient sureties execute and acknowledge before the judge the undertaking of sufficient bail. I.C. § 19–2909. In the undertaking, the sureties promised to pay the sum specified by the judge as bail if the defendant failed to appear or to hold himself amenable to the orders and process of the court. *Id.* The sureties each had to be a resident, householder, or freeholder in this state, and they each had to be worth the amount specified in the undertaking exclusive of property exempt from execution. I.C. § 19–2910. The court could also require that they be residents of the county where the bail is offered. *Id.* The sureties had to sign affidavits showing that they possessed the statutory qualifications to be bail, and the court could examine them under oath regarding their sufficiency to pay the amount of the undertaking. I.C. § 19–2911. All of the statutes cited in this paragraph were adopted in 1864 by the territorial legislature. None of them have since been amended except Idaho Code § 19–2909, and the amendments

to that statute were not substantive. These statutes do not address bail bonds because bail bonds did not exist when they were enacted. Appellant is attempting to make them apply to the bail bond agents, supervising agents, and surety companies that exist today. Neither the bail bond agent nor the surety company fits the statutory qualifications of the two sufficient sureties set forth in Idaho Code § 19–2910. Modifying the statutes to make them applicable to bail bond agents and surety companies is the province of the legislature.

### D. Is It the Surety or the Bail Bond Agent Who Is Entitled to Notice of Bond Forfeiture?

The Appellant sought an order "requiring the Trial Court Administrator to mail future forfeiture notices for bonds the Petitioner wrote while employed at Acme to the supervising agent of Acme and not the Petitioner, individually." The ADJ denied that requested relief on the ground that Idaho Code § 19–2927 and Idaho Criminal Rule 46(e)(5) require the court clerk, not the TCA, to mail the written notice of forfeiture to "the person posting the undertaking of bail." On appeal, the Appellant seeks to change the issue from requiring the TCA to mail the notices of forfeiture to requiring the clerk to mail the notices to the surety company. Appellant argues that the phrase "the person posting the undertaking of bail" refers to the surety company, not the bail bond agent. That issue was not raised below, and so we will not consider it for the first time on appeal. *Murray v. Spalding*, 141 Idaho 99, 101, 106 P.3d 425, 427 (2005).

### E. Does the ADJ Have the Authority to Remove a Bail Agent from the Approved List Because the Agent's Former Surety Did Not Pay a Forfeited Bond?

In her letters to the Appellant regarding the bail bonds posted on behalf of defendants Hurrle and Keena, the Assistant TCA informed the Appellant that these three letters constituted his first, second, and third violation notices, and the TCA "may request the Administrative District Judge to remove your name from the authorized list of bail agents upon mailing the fourth violation notice." During the hearing, there was testimony that Acme Bail Bonds had paid the forfeited bond in the Hurrle case, leaving only the forfeited bonds in the Keena case unresolved. The TCA did not seek to have the Appellant's name removed from the approved list of bail bond agents, nor did the ADJ order his name removed. At the commencement of the hearing below, counsel for the TCA stated that the TCA had no intention of removing Appellant from the list of approved bail bond agents. Thus, the only issue presented is whether, in the abstract, the ADJ has the authority to remove a bail bond agent from the approved list because the agent's surety did not pay a forfeited bond. That issue was not raised below, and therefore we will not consider it. *Murray v. Spalding*, 141 Idaho 99, 101, 106 P.3d 425, 427 (2005).

## IV. CONCLUSION

We affirm the order of the Administrative District Judge, and we award costs on appeal to the Trial Court Administrator.

Chief Justice SCHROEDER, and Justices TROUT, BURDICK and JONES concur.